UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL DAVID DESROCHES,           )
                                   )
        Plaintiff              )
                                   )
v.                                 )   No. 2:14-cv-295-JHR
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security,  )
                                   )
        Defendant              )

### MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the administrative law judge erred in declining to fully credit a mental residual functional capacity ("RFC") opinion of treating psychiatrist Dylan McKenney, M.D., and in adopting a mental RFC opinion of agency nonexamining consultant David R. Houston, Ph.D., who did not review later-submitted records demonstrating worsening symptoms. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 13, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 12.

1

("Statement of Errors") (ECF No. 8) at 2-5. I find no reversible error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, Finding 1, Record at 42; that he had severe impairments of an anxiety-related disorder, an affective disorder, and a history of alcohol use, Finding 3, *id*.; that he had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: able to learn, perform, and carry out simple tasks with no interaction with the public, Finding 5, *id*. at 44; that, considering his age (39 years old, defined as a younger individual, on his alleged disability onset date, September 30, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 48; and that he, therefore, had not been disabled from his alleged onset date of disability, September 30, 2010, through the date of the decision, March 4, 2013, Finding 11, *id*. at 49. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Handling of McKenney Opinion

Dr. McKenney submitted a mental RFC opinion dated May 3, 2012, in which he assessed the plaintiff's ability to deal with the public, deal with work stresses, and relate predictably in social situations as "Poor or None." Record at 395-97. The form that he completed defined the phrase "Poor or None" as meaning "[n]o useful ability to function in this area." *Id*. at 395. He also indicated that the plaintiff had only a "Fair" capacity in a number of other areas, including relating to co-workers, interacting with supervisors, functioning independently, behaving in an emotionally stable manner, and demonstrating reliability. *Id*. at 395-97. The form defined the word "Fair" as meaning "[a]bility to function in this area is seriously limited, but not precluded." *Id*. at 395.

With respect to the assessed limitations on ability to relate to coworkers, deal with the public, interact with supervisors, deal with work stresses, and function independently, Dr. McKenney explained:

> [The plaintiff] is extremely burdened with anxiety which produces symptoms of obsessional thoughts, compulsive behavior and dissociation. This is worsened by external stress and social stimulation.

*Id*. at 396. With respect to the assessed limitations on behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability, he explained: "Impressions are based on repeated clinical interview." *Id*. at 397. "Please see my medical documentation for further information." *Id*.

Dr. McKenney assessed the plaintiff's ability to understand, remember, and carry out job instructions ranging from complex to simple as "Good[,]" but explained:

> There are no cognitive limitations to impede job functioning except when in an anxious state [the plaintiff] will dissociate and not internalize new information. At baseline I have answered all of the above items good. In an anxious state I would mark them all poor.

*Id*. at 396.

The administrative law judge stated that he "gave only some weight" to the McKenney opinion, explaining:

> Dr. McKenney began seeing the [plaintiff] in December 2011 and prescribes [his] psychotropic medication. The opinion itself appears to overstate the [plaintiff's] functional limitations. Dr. McKenney's opinion is not consistent with the medical evidence of record in terms of the degree of functional limitation the [plaintiff] possesses. It relies on the [plaintiff's] subjective complaints, which are not supported by the overall evidence. In addition, the opinion does not address the issue of the [plaintiff's] substance abuse as it affects his ability to function. However, the undersigned did give some weight to Dr. McKenney's opinion that the [plaintiff's] stress is worsened by external stress and social stimulation and used those limits in the [RFC] assessment.

*Id*. at 47.

He elsewhere discussed in detail that he found the plaintiff's subjective allegations not entirely credible because, although the plaintiff had been diagnosed with depression and an anxiety-related disorder, his alleged dysfunction related primarily to alcohol abuse. *See id*. at 45. He observed that the plaintiff "has been hospitalized numerous times for detoxification, followed

4

by intensive outpatient treatment with varying periods of sobriety"; following a hospitalization for detoxification from September 29, 2010, to October 2, 2010, the plaintiff was fired from his longtime job at Best Buy, became increasingly isolated, and self-medicated with alcohol; and during some of the relevant period, the plaintiff received medication for depression but was not on any psychotropic medication as of the time of a hospitalization for detoxification in November 2011. *Id.*

He noted that, also in November 2011, the plaintiff underwent a 10-day psychiatric hospitalization at Spring Harbor Hospital, following which he commenced outpatient mental health treatment that entailed biweekly visits with a psychiatrist, biweekly visits with a therapist, and group treatment for dual diagnosis. *See id.* The plaintiff initiated care with Dr. McKenney, one of the psychiatrists who supervised his medication management as part of that outpatient program, on December 21, 2011. *See, id.* at 445-46. The administrative law judge concluded that, thereafter, the plaintiff's "symptoms improved as his abstinence lengthened and with treatment including medication[,]" and "[h]e did not have symptoms of suicide ideation, his mood stabilized and he reported only episodic anxiety in response to several losses he had suffered because of his drinking." *Id.* at 45 (citation omitted).

The plaintiff complains that the administrative law judge erroneously discounted Dr. McKenney's opinion on the basis of its failure to account for the contribution of alcohol use even though the plaintiff had been sober for several months prior to the date of the opinion. *See* Statement of Errors at 2-3. He asserts that treatment notes postdating the McKenney opinion show that his condition worsened despite sustained remission from alcohol use. *See id.* at 3. He observes, for example, that the most recent treatment note of record described his alcohol dependence as "in full, sustained remission" while noting that he "continue[d] to struggle with

5

what appear to be severe nightmares" as well as ongoing symptoms of obsessive-compulsive disorder, ongoing anxiety and panic attacks, and suicidal thoughts. *Id.* (quoting January 4, 2013, note of psychiatrist Allison Davidson, D.O., Record at 647). He adds that Dr. McKenney, a psychiatrist at Maine Medical Center, was fully aware of his history of alcohol abuse, which was documented in Maine Medical Center's records. *See id*.

He asserts that it was blatant error to find, in the face of the documented continuation of his severe symptoms despite his cessation of alcohol use, that his dysfunction had "been created largely by his alcohol use and intoxication." *Id.* at 4 (quoting Record at 45). He argues that the error colored the entire decision and warrants remand in view of Dr. McKenney's assessment of disabling restrictions. *See id*.

At oral argument, counsel for the commissioner conceded that it would have been "problematic" for the administrative law judge to discount the McKenney opinion solely on the basis of Dr. McKenney's asserted failure to take into account the effects of alcohol abuse. However, he argued that the administrative law judge supportably declined to adopt the opinion *in toto* for the other reasons given: that it was inconsistent with the medical evidence of record, including evidence of improvement upon abstinence from alcohol and mostly benign findings on mental status examination, and appeared to be based largely on the plaintiff's subjective reports. *See also* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 9) at 8-15.

I agree. As the commissioner observes, *see id*. at 9-15, the administrative law judge based those conclusions on a detailed discussion of the record evidence, *see* Record at 45-46, observing, *inter alia*, that:

6

1. From the plaintiff's alleged onset date of disability, September 30, 2010, through the time of his first psychiatric hospitalization in November 2011, he did not maintain sobriety, did not take prescribed medication consistently, and had not yet commenced counseling. *See id*. at 327-28, 581, 591-92.

2. By November 30, 2011, within a month of the plaintiff's commencement of treatment at a Partial Hospitalization Program and continued abstinence, his therapist described him as having only a mildly anxious affect and a stable mood. *See id*. at 484.

3. On December 7, 2011, Ann Albert, N.P., noted that the plaintiff's mood was starting to improve as he maintained abstinence and took his medications, and she discharged him to outpatient care. *See id*. at 463.

4. On December 9, 2011, the plaintiff reported in group therapy that he felt stable and that his anxiety was "manageable." *Id*. at 455.

5. The plaintiff relapsed in mid-December 2011 and may have relapsed in January 2012. *See id*. at 434, 450.

6. The plaintiff's Global Assessment of Functioning, or "GAF," scores were quite low when he was hospitalized for detoxification and rose afterward to levels suggesting only moderate limitations. *See id*. at 45.[2]  For example, during the plaintiff's alcohol detoxification from November 3, 2011, through November 5, 2011, his GAF score was assessed as 40 on admission and 55 at discharge, *see id*. at 592, and when he relapsed, leading to his psychiatric

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34.

hospitalization from November 7, 2011, through November 16, 2011, his GAF score was assessed as 25 on admission and 55 at discharge, *see id*. at 325, 328.[3]

7. The plaintiff did express higher anxiety during a meeting with Dr. McKenney in May 2012, and reported symptoms including depression, nightmares, sleeplessness, and hypervigilance to his therapist, Troy Clark, LCSW. *See id*. at 398, 407, 626. However, in May 2012, the plaintiff's Zoloft had been discontinued in order to start a new antidepressant, Remeron (mirtazapine), and the plaintiff had not yet taken Remeron because he feared it would make him drowsy or intoxicated. *See id*. at 407, 409-10. The plaintiff later reported some improvement from Remeron. *See id*. at 398, 624-26.

8. Despite the plaintiff's reported continuing symptoms, beginning on July 6, 2012, Clark referred him for vocational programming. *See id*. at 605, 615, 621, 624. On August 1, 2012, Clark noted that the plaintiff's "[l]ack of structure, finances and an absence of meaningful activity contribute significantly to [his] depression and anxiety." *Id*. at 621.

9. During the plaintiff's treatment with Dr. McKenney from December 2011 through June 4, 2012, his mood and affect varied between being dysthymic and euthymic, but Dr. McKenney consistently observed that he made good eye contact, his speech was fluent and articulate, his thought process was linear, his cognition was grossly intact, his insight and

---

[3] A GAF score of 21 to 30 represents "[b]ehavior [that] is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." DSM-IV-TR at 34 (boldface omitted). A GAF score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id*. (boldface omitted). A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted).

judgment were appropriate for outpatient care, he denied suicidal ideation, and his psychomotor activity was normal but for some restlessness on one occasion. *See id*. at 400, 407, 412, 416, 420-21, 427, 445. The plaintiff did initially report occasionally hearing his name whispered to him and seeing a person or shadows out of the corner of his eye, but Dr. McKenney observed that this might be "within the normal range of perceptual phenomenon[,]" and no reports were made of it after the first two times that Dr. McKenney examined the plaintiff. *See id*. at 427, 445.

10. Dr. Davidson, who took over the plaintiff's medical management from Dr. McKenney, likewise found that, although the plaintiff's mood varied, he remained cognitively intact, was consistently alert and oriented, made good eye contact, and had clear speech, adequate or fair insight and judgment, and generally normal thought content or only "low-grade" passive suicidal ideation or paranoia. *See id*. at 599, 604, 607-08, 618, 647, 650, 652.[4]

At oral argument, the plaintiff's counsel criticized the administrative law judge's reliance on the results of Drs. McKenney's and Davidson's mental status examinations and rejection of the subjective history they had taken from the plaintiff, arguing that mental status examinations are simply one-time snapshots and that psychiatrists are trained to take into account and evaluate patients' reports of their ability to function in between treatment sessions. Yet, as counsel for the commissioner rejoined, the First Circuit has held that an administrative law judge properly discounted a treating source's opinion in part on the basis that his "report appear[ed] merely to

---

[4] For example, although, in the January 4, 2013, treatment note quoted in the statement of errors, Dr. Davidson recorded the plaintiff's report that he continued to struggle with severe nightmares, suicidal thoughts, panic attacks, and ongoing symptoms of obsessive-compulsive disorder, she found on mental status examination that day that he had clear speech, good eye contact, no psychomotor abnormalities, a linear thought process, and adequate insight and judgment, and was alert and oriented. *See* Record at 647. The plaintiff reported that his mood was "alright[,]" and his affect was "generally pleasant and joking[,]" although he became "tearful at various times." *Id*. He had only "low-grade passive suicidal ideation with no intent or plan" and "very low-grade feelings of paranoia." *Id*.

9

restate claimant's subjective complaints[,]" *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 4 (1st Cir. 1987), and Dr. Houston, himself a mental health expert, indicated that the McKenney opinion "relie[d] heavily on the subjective report of symptoms and limitations provided by the individual" and was "without substantial support from other evidence of record, which renders it less persuasive." Record at 108.

Based on the totality of this evidence, the administrative law judge reasonably found that the restrictions set forth in the McKenney opinion were largely based on the plaintiff's subjective complaints and were inconsistent with the record as a whole (including objective findings on mental status examinations and indications of improvement with alcohol abstinence and mental health treatment). These, in turn, constituted the requisite "good reasons" for discrediting a treating source opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (an administrative law judge must "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *id*. §§ 404.1527(c), 416.927(c) (factors relevant to the evaluation of medical opinions include supportability *i.e.,* adequacy of explanation for the opinion, and consistency with the record as a whole).

In any event, as the commissioner argues in the alternative, *see* Opposition at 15-16, even if the administrative law judge erred in rejecting the McKenney opinion in part, any error was harmless. The vocational expert present at the plaintiff's hearing testified that a person with restrictions assessed by McKenney, as relayed by the administrative law judge, could perform the jobs of mail sorter, retail marker, and material handler, on which the administrative law judge relied at Step 5 to find the plaintiff not disabled. *See* Record at 49, 80-82.

At oral argument, the plaintiff's counsel countered that reliance on the vocational expert's testimony to demonstrate harmless error is misplaced in that it conflicts with Social

Security Ruling 85-15 ("SSR 85-15") and, in any event, is ambiguous. *See also* Statement of Errors at 3-4 (citing Record at 84-85). SSR 85-15 provides, in relevant part:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. . . . Any impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.

SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 349.

The plaintiff's counsel argued that the vocational expert made precisely the type of error described in SSR 85-15, testifying that a person who had, *inter alia*, a poor ability or no ability to deal with work stress could perform the cited jobs because the jobs were unskilled and typically did not involve a significant amount of stress due to the fact that they were "simplistic and repetitive." Record at 81. The plaintiff's counsel added, as set forth in the statement of errors, that, in any event, the vocational expert conceded on cross-examination that "an unusual sensitivity to stress would preclude employment[,]" and "[s]uch unusual sensitivity is indicated in Dr. McKenney's evaluation." Statement of Errors at 3.

While SSR 85-15 calls for an individualized assessment of a claimant's response to stress, Dr. McKenney's opinion was such an assessment. When asked, at oral argument, if the administrative law judge had failed to transmit any of Dr. McKenney's stress-related limitations to the vocational expert, the plaintiff's counsel could identify none. Indeed, the administrative law judge relayed to the vocational expert the two restrictions in the McKenney opinion that appear to bear on the issue of ability to handle stress: that the plaintiff had poor or no ability to deal with work stresses and that he had no cognitive limitations except when in an anxious state. *See* Record at 395-97. In quantifying the plaintiff's anxious states for the vocational expert, the administrative law judge accepted the plaintiff's own testimony that he had a panic attack once

daily, lasting 15 to 30 minutes, during which he was not able to function. *See id*. at 78, 82. The vocational expert testified that those limitations would not preclude employment because "all of the jobs are performed independently" and "not in tandem or conjunction with other workers[,] which allows more flexibility in completing the job task reasonably at the worker's own . . . pace as long as the material and substantial occupational duties are completed on a regular basis." *Id*. at 82. As counsel for the commissioner observed at oral argument, the plaintiff has not shown that he would have been in an anxious state for a greater percentage of a workday. I perceive no conflict with the dictates of SSR 85-15.[5]

Nor did the vocational expert's testimony on cross-examination undermine his earlier testimony that a person with the McKenney restrictions could perform the jobs at issue. As counsel for the commissioner suggested at oral argument, the later testimony did not bear on whether a person with the restrictions found by Dr. McKenney could perform the jobs at issue. On cross-examination, the vocational expert conceded that "stress is a subjective state of mind[,]" and "[w]hat's stressful to you . . . I'm sure would not be stressful . . . to other individuals." *Id*. at 84. The plaintiff's counsel then inquired, "if somebody's particularly susceptible to stress as [the plaintiff] testified, it would tend to be a bigger problem for them, wouldn't it?" *Id*. at 85. The vocational expert responded, "[c]ertainly, I agree." *Id*. This line of questioning was based on the plaintiff's testimony, not the McKenney limitations. *See id*.

---

[5] As the commissioner acknowledges, neither the administrative law judge nor the plaintiff's counsel relayed portions of Dr. McKenney's opinion in which he indicated that the plaintiff had a good ability to maintain personal appearance, a fair ability to behave in an emotionally stable manner, and a fair ability to demonstrate reliability. *See* Opposition at 16; *compare* Record at 81-85 *with id*. at 395-97. Yet, as the commissioner notes, *see* Opposition at 16, the plaintiff does not attempt to demonstrate that the omission of those restrictions made any difference in his ability to perform the jobs at issue, *see* Statement of Errors at 3-4.

Moreover, the vocational expert did not make clear that the limitations to which the plaintiff testified would preclude the jobs at issue. *See id.*[6]

Thus, even assuming error in the partial rejection of the McKenney limitations, the plaintiff falls short of demonstrating that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (a claimant bears the burden to demonstrate harmful error). He, therefore, fails to demonstrate entitlement to remand on the basis of the administrative law judge's handling of the McKenney opinion.

### B. Handling of Houston Opinion

The plaintiff finally argues that the administrative law judge's adoption of the Houston opinion constitutes another basis for remand in that Dr. Houston did not have the benefit of review of subsequent medical evidence documenting worsening symptoms in the face of the plaintiff's sustained abstinence from alcohol. *See* Statement of Errors at 5. As a result, he reasons, the administrative law judge made an impermissible lay determination of his mental RFC. *See id.*

This court has noted that "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Brackett v.*

---

[6] At oral argument, the plaintiff's counsel criticized the commissioner's reliance on the vocational expert's testimony concerning the McKenney restrictions on the further basis that the administrative law judge did not adopt it. That is of no moment. Vocational expert testimony may demonstrate that an error was harmful or harmless, regardless of whether it was adopted.

*Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted).

The records unseen by Dr. Houston do not reflect a material change. As discussed above, Dr. Davidson, like Dr. McKenney, continued to record the plaintiff's ongoing subjective reports of severe symptoms together with normal to mild findings on mental status examination. With the benefit of review of Dr. McKenney's treatment notes, Dr. Houston deemed Dr. McKenney's mental RFC opinion overly restrictive in that it relied heavily on the plaintiff's subjective complaints and was unsupported by other evidence of record. Moreover, as the commissioner points out, *see* Opposition at 18-19, in assessing the plaintiff's capabilities, Dr. Houston relied in part on the plaintiff's own report that he was capable of self-care, prepared meals, did housework, went out alone, drove, shopped, managed money, and socialized with others, *see* Record at 104-07, 110. There is no reason to believe that a review of the later psychiatric treatment notes would have altered Dr. Houston's views. Hence, the administrative law judge's reliance on the Houston mental RFC opinion was not misplaced.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 17th day of April, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge